UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL V.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06783 EAW

## INTRODUCTION

Represented by counsel, plaintiff Paul V. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 10; Dkt. 11) and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on May 11, 2018. (Dkt. 9 at 19, 73).[1] In his application, Plaintiff alleged disability beginning May 7, 2018. (*Id.* at 19, 172). Plaintiff's application was initially denied on September 21, 2018. (*Id.* at 19, 92-103). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Benjamin Chaykin on November 25, 2019. (*Id.* at 36-72). At the hearing, Plaintiff amended his alleged onset date to February 28, 2017. (*Id.* at 19). On December 17, 2019, the ALJ issued an unfavorable decision. (*Id.* at 16-35). Plaintiff requested Appeals Council review; his request was denied on August 18, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. (Dkt. 9 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 28, 2017, the amended alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "spine disorder; obsessive-compulsive disorder; and post-traumatic stress disorder (PTSD)." (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe impairment of obesity. (*Id.* at 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-23). In particular, the ALJ considered the requirements of Listings 1.04, 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id.* at 23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> (1) occasional climbing of ropes, scaffolds or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, crouching, balancing, kneeling or crawling; (4) limited to simple, routine tasks; (5) limited to occasional interaction with supervisors, co-workers and the public; (6) [Plaintiff] can sustain concentration and persistence for periods of up to two hours at a time; and (7) limited to occasional changes in the work setting.

(*Id.* at 24). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, router, and photocopy

machine operator. (*Id.* at 29-30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 30).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for further proceedings, arguing that the ALJ failed to properly evaluate opinion evidence from Plaintiff's treating physicians. (Dkt. 10-1 at 1). The Court is not persuaded by this argument, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on May 11, 2018, the new regulations, codified at 20 C.F.R. § 404.1520c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3)

relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G.*

*v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

Here, Plaintiff has identified numerous medical opinions that he contends the ALJ failed to properly evaluate. (Dkt. 10-1 at 17-18). They are: a Work Status Report by Dr. Karl Auerbach dated September 8, 2016; a joint opinion of Dr. Auerbach and physician's assistant ("PA") Benjamin Mincer dated October 14, 2016; a joint opinion of Dr. Auerbach and PA Mincer dated October 28, 2016; an opinion of Dr. Joanne Wu dated November 8, 2016; seven opinions by Dr. Oliver Masaba issued between December 12, 2016, and October 9, 2017; a "Medical Report Orthopedic and Miscellaneous Disabilities" by Dr. Masaba dated November 2, 2018; 10 opinions issued by Dr. Masaba between January 26, 2018, and June 17, 2019; and a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" by Dr. Masaba dated November 15, 2019. (*Id*.).

As to all of these opinions except for Dr. Masaba's Medical Source Statement dated November 15, 2019, the ALJ provided joint consideration. He concluded that these opinions were not persuasive, explaining that: "[a]s for supportability," they generally contained little analysis, were meant to provide an assessment of Plaintiff's abilities specifically at the time of examination, and were not "assessments of ongoing limitations lasting at least 12 consecutive months"; and that "[a]s for consistency," the examination records did not contain observations supporting certain of the identified limitations, the

opinions appeared to be based substantially on Plaintiff's subjective complaints (which the ALJ had found only partially credible), and the opinions were "given for workers' compensation purposes, and concern standards of disability that are different from those used by the Social Security Administration." (Dkt. 9 at 27-28).

Plaintiff contends that this explanation by the ALJ was "insufficient." (Dkt. 10-1 at 19-20). The Court disagrees. The ALJ was correct that the opinions at issue were accompanied by very little (and in some cases no) analysis or explanation. (*See* Dkt. 9 at 267, 477, 527, 534, 555, 562, 569, 601, 616, 622, 747, 764, 779, 788, 790, 829, 835, 840, 850, 905, 912, 919, 926). They also largely indicated that the limitations identified therein were expected to apply for only 90 days and referred to "temporary impairment." (*See, e.g., id*. at 527, 534, 555, 562, 569, 601, 616, 622, 747, 829, 835, 840, 850, 905, 912, 919, 926). The Court accordingly disagrees with Plaintiff that the ALJ's comments were "factually inaccurate." (Dkt. 10-1 at 19-20). Further, and as noted above, the applicable regulations expressly provide that "[t]he more relevant the objective medical evidence and <u>supporting explanations</u> presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added).

The Court further disagrees with Plaintiff that the ALJ inappropriately relied "on his lay opinion" to conclude that the physical examination results were not consistent with certain of the identified limitations. (*Id*. at 20). An ALJ is within his discretion to consider whether an opinion is supported by the objective medical evidence of record. *See, e.g.,*

*Esther Marie H. v. Comm'r of Soc. Sec.,* No. 5:20-CV-00668 (TWD), 2021 WL 5629076, at *5 (N.D.N.Y. Dec. 1, 2021); *Morgan v. Comm'r of Soc. Sec.*, No. 1:18-CV-00884-MJR, 2019 WL 6337528, at *5 (W.D.N.Y. Nov. 27, 2019).

The ALJ did not, as Plaintiff seems to suggest, reject the opinions simply because they were offered in the workers' compensation context. Instead, he correctly noted the context as one factor among several impacting his assessment. Portions of the opinions were addressed to questions that are particular to the workers compensation context, and it was not erroneous for the ALJ to consider that fact. *See, e.g., Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) ("Perozzi argues that the ALJ improperly discounted Dr. Gaughan's opinion because he rendered it in the context of Perozzi's pursuit of a workers' compensation claim. We agree that an ALJ may not reject a treating source's opinions solely for this reason. Here, however, the ALJ noted the role of Dr. Gaughan in Perozzi's workers' compensation case as only one factor for giving his opinions little weight." (citations omitted)).

It also was not improper for the ALJ to consider whether the opinions gave undue weight to subjective complaints that the ALJ had concluded were not fully credible. *See, e.g., Jackson v. Berryhill*, No. 17-CV-6268-FPG, 2018 WL 3306193, at *5-6 (W.D.N.Y. July 5, 2018) ("[T]he ALJ's credibility determination may influence how he weighs the medical opinions, especially when those opinions are based on the claimant's subjective statements. . . . [B]ecause the ALJ found Jackson's subjective complaints not credible, he was entitled to discount Dr. Donohue's opinions where they relied on those complaints.").

Turning to the ALJ's specific assessment of Dr. Masaba's Medical Source Statement from November of 2019, the ALJ found it not persuasive on consistency grounds. In particular, the ALJ explained that: "the record as a whole has generally noted stable gait, full strength and range of motion in all extremities, with complaints of back pain and limited motion. Together, the record is more consistent with light work, but with reduced climbing and postural activities. The record as a whole does not generally support the need for frequent breaks or time off-task, as no treatment provider has recommended this, and as noted, the claimant has been capable of performing a variety of daily activities." (Dkt. 9 at 29).

Plaintiff argues that it is not true that the record as a whole "generally noted stable gait, full strength and range of motion in all extremities, with complaints of back pain and limited motion." (Dkt. 10-1 at 23). Plaintiff points to several instances in which Dr. Masaba noted abnormal gait and several instances in which he "noted restricted lumbar range of motion[.]" (*Id.*). As to the noted instances of restricted lumbar range of motion, it is unclear why Plaintiff thinks this is inconsistent with the ALJ's analysis. The ALJ indicated that the record showed full range of motion in all extremities (*i.e.* the arms and legs) and acknowledged the limited range of motion in the back. As to Plaintiff's gait, the ALJ explained elsewhere in his decision his determination that Plaintiff generally had a steady gait, explaining that a steady gait had been observed by Plaintiff's physicians in December of 2016, January of 2017, August of 2017, November of 2017, and February of 2018, and that in August of 2018, Plaintiff advised consultative examiner Dr. Despina Isihos that he was able to ambulate without a cane. (Dkt. 9 at 25-26). Genuine conflicts

in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Plaintiff also takes issue with the ALJ's statement that "no treatment provider [had] recommended" a need for frequent breaks or time off-task, pointing out that Dr. Masaba himself had made this recommendation. (Dkt. 10-1 at 24). However, while the ALJ's language may have been inartful, he clearly meant that no other treatment provider apart from Dr. Masaba had made such a recommendation. *Cf.* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence <u>from other medical sources</u> and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." (emphasis added)). This was an accurate statement—Drs. Auerbach and Wu and PA Mincer all provided opinions in which they did not indicate any need for frequent breaks or off-task time. Moreover, while Plaintiff points out that "independent medical examiner Dr. [Elias] Nicolas opined Plaintiff would need frequent breaks to stand and stretch" (Dkt. 10-1 at 24), an independent medical examiner is not a treatment provider.

Plaintiff also argues that the ALJ did not describe the "variety of daily activities" that were inconsistent with Dr. Masaba's opinion regarding the need for frequent breaks or off-task time. (*Id*. at 25). This is incorrect. The ALJ explained elsewhere in the decision that Plaintiff was able to engage in activities such as driving, preparing meals, managing money, and shopping. (Dkt. 9 at 23). The ALJ was not required to expressly repeat this list of activities when discussing Dr. Masaba's opinion. Further, the ALJ did not, as Plaintiff suggests, conclude that these activities proved the ability to perform substantial

gainful work. He instead observed that they were inconsistent with an inability to stay on task. This was within his discretion.

Finally, the Court is unpersuaded by Plaintiff's argument that the ALJ erred in failing to include a limitation on twisting in his RFC finding because "every examination medical source found Plaintiff had limitations with twisting." (Dkt. 10-1 at 26). This argument is incorrect as a factual matter. Dr. Nicolas examined Plaintiff and issued opinions on November 27, 2017, and April 12, 2018, that made no mention of a twisting limitation. (Dkt. 9 at 513, 522-23). Moreover, and as Defendant correctly points out, the representative occupations identified by the ALJ do not require repetitive twisting. *See Marker,* Dictionary of Occupational Titles ("DICOT") No. 209.587-034, 1991 WL 671802; *Router,* DICOT No. 222.587-038, 1991 WL 672123; *Photocopy Machine Operator,* DICOT No. 207.685-014, 1991 WL 671745. Accordingly, even if it was error for the ALJ to omit a twisting restricting from the RFC finding, that error was harmless. *See Santos G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-821-DB, 2021 WL 3861424, at *7 (W.D.N.Y. Aug. 30, 2021).

In sum, the Court finds no reversible error in the ALJ's assessment of the opinion evidence in this case. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

- 14 -

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:	September 21, 2022
	Rochester, New York